UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————X
Yacouba Traore

                         Petitioner,                              Case No.

            v.

Thomas R. Decker, in his official capacity as New York
Field Office Directorfor U.S. Immigration and
Customs Enforcement; Kirstjen Nielsen in her official
capacity as Secretary of Homeland Security;
Jefferson B. Sessions, in his official capacity as
the Attorney General of the United States and the U.S.
Department of Homeland Security,

                         Respondents.
——————————————————————————X

**<u>PETITION FOR WRIT OF HABEAS CORPUS</u>**

                                          Craig Relles (CR5112)
                                          Attorney for Petitioner
                                        12 Water Street, Suite 203
                                        White Plains, New York 10601
                                        TEL: (914) 919-9030

1.      This petition challenges the government's authority to indefinitely detain a noncitizen

without any finding of dangerousness or flight risk. It asks that this Court grant the petitioner

release from imprisonment, or, in the alternative, a bond hearing before a neutral arbiter.

2.      Petitioner is a native and a citizen of Mali, who was paroled into the United States on

February 3, 2006, pursuant to INA section 212(d)(5) at Detroit Metropolitan Airport, in Detroit

Michigan, in order to pursue a relief application.

3.      As of the date of this Petition, petitioner has been detained by Immigration and Customs

Enforcement ("ICE") for 267 days. Petitioner was originally detained and placed in removal

proceedings by ICE on or about December 5, 2017.

4.      ICE claims the authority to indefinitely detain petitioner without a bond hearing under the

Immigration and Nationality Act ("INA") § 235(b), 8 U.S.C. § 1225(b). In separate subsections,

that statute provides for the detention of asylum seekers who pass a credible fear interview "for

further consideration of the application for asylum," *Id*. § 1225(b)(1)(B)(ii), as well as detention

of all other noncitizens whom an immigration official believes are not "clearly and beyond a

doubt entitled to admission for a proceeding under 1229a of this title [removal proceedings

before an immigration judge]." *Id*. § 1225(b)(2)(A). Collectively, the Department of Homeland

Security ("DHS") refers to these noncitizens as "arriving aliens." 8 C.F.R. § 1.2.

5.      The government interprets § 1225(b) to require mandatory detention without a bond

hearing of all arriving aliens, for the indefinite length of time necessary to complete removal

proceedings, even if that time becomes unreasonably prolonged. See *Matter of X-K-*, 23 I. & N.

Dec. 731, 732 (BIA 2005) ("There is no question that Immigration Judges lack jurisdiction [for a

bond hearing] over arriving aliens who have been placed in . . . removal proceedings . . . ."); 8

C.F.R. § 1003.19(h)(2)(i)(B) (stating that an immigration judge may not conduct a custody determination of an "arriving alien").

6.      Petitioner's indefinite detention pending removal proceedings violates the U.S. Constitution's Fifth Amendment because it deprives petitioner of liberty without due process of law.

7.      Petitioner therefore respectfully requests that this Court issue a writ of habeas corpus and order petitioner's release from custody, with appropriate conditions of supervision if necessary. In the alternative, petitioner requests that this Court conduct or order an immigration judge to conduct a bond hearing at which (1) the government bears the burden of proving flight risk and dangerousness by clear and convincing evidence and (2) the reviewing court considers alternatives to detention that could mitigate risk of flight.

## PARTIES

8.      Petitioner is presently detained at the direction of Respondents at Bergen County Jail, located 160 South River Street, Hackensack, New Jersey 07601.

9.      Thomas R. Decker is named in his official capacity as the Field Office Director of the New York Field Office for ICE within the United States Department of Homeland Security. In this capacity, he is responsible for the administration of immigration laws and the execution of detention and removal determinations, and is the legal custodian of Petitioner. Respondent Decker's address is Office of Enforcement and Removal Operations, New York Field Office Director, 26 Federal Plaza, New York, New York 10278.

10.     Respondent Kirstjen Nielsen is named in her official capacity as the Secretary of DHS. She is responsible for the administration of the immigration laws. 8 U.S.C. § 1103(a). She

routinely transacts business in the Southern District of New York and is legally responsible for Petitioner's detention. As such, she is a legal custodian of Petitioner. Respondent Nielsen's address is United States Department of Homeland Security, 3801 Nebraska Ave NW, Washington, DC 20016.

11.     Respondent Jefferson Beauregard Sessions III is named in his official capacity as the Attorney General of the United States. He is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review. 8 U.S.C. § 1103(g). He routinely transacts business in the Southern District of New York is legally responsible for Petitioner's detention. As such, he is a legal custodian of Petitioner. Respondent Sessions's address is United States Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530.

## JURISDICTION

12.     This Court has subject matter jurisdiction over the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C §2241, 28 U.S.C § 1331, and Article I, §9, cl. 2 of the United States Constitution; the All Writs Act, 28 U.S.C § 1651; the Administrative Procedure Act, 5 U.S.C § 701; and for injunctive relief the Declaratory Judgement Act, 28 U.S.C. § 2201. Petitioner's current detention as enforced by Respondents constitutes a "severe restrain on [Petitioner's] individual liberty," such that Petitioner is "in custody" in violation for the laws of the United States, See *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973).

## STATEMENT OF VENUE

13.     Venue properly lies in the Southern District of New York, as the events leading to this Petition, including Petitioner's removal proceedings, and Petition for Review are or have been

4

conducted within this District. Further, 28 U.S.C. § 1391(e) dictates that a civil action in which a defendant is an officer or employee of the United States…may… be brought in any judicial jurisdiction in which (1) a defendant in the action resides, (2) a substantial part of the acts or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action. Lastly, venue is proper because, when a facility detains a petitioner pursuant to a service agreement with a governmental agency, proper respondents to a habeas petition are, the governmental agency and its supervisory officials. See *Calderon v. Sessions*, 2018 WL 3584704 (SDNY July 24, 2018).

## EXHAUSTION OF REMEDIES

14.     There is no statutory requirement of exhaustion of administrative remedies where a noncitizen challenges the lawfulness of his detention. See *Louisaire v. Muller*, 758 F.Supp 2d 229, 234 (S.D.N.Y. 2010); *Garcia v. Shanahan*, 615 F. Supp. 2d 175, 180 (S.D.N.Y. 2009). Any requirement of administrative exhaustion in therefore purely discretionary.

15.     In making that decision, the Court should consider the urgency of the need for immediate review. "Where a person is detained by executive order… the need for collateral review is most pressing … In this context the need for habeas corpus is more urgent." *Boumediene v. Bush*, 553 U.S. 723, 783 (2008) (waiving administrative exhaustion for executive detainees).

16.     Further, "the BIA [Board of Immigration Appeals] does not have jurisdiction to adjudicate constitutional issues…" (quotations and citation omitted). *United States v. Gonzalez-Roque*, 301 F.3d 39, 48 (2d Cir. 2002). Because petitioner raises a constitutional due process claim in his habeas petition, exhaustion of his due process claims would be futile.

17.     A request for release on humanitarian parole under 8 U.S.C. 1182(d)(5)(A) would also be futile. Parole review is conducted informally by DHS officers—the jailing authority—by checking a box on a form that contains no factual findings, no specific explanation, and no evidence of deliberation. There is no hearing, no record, and no administrative appeal from a negative parole decision, even to manifest errors. *See Arias v. Aviles,* 2016 WL 3906738 (S.D.N.Y. 2016) *;Rodriguez v. Robbins*, 804 F.3d 1060, 1081 (9th Cir. 2015), *cert. granted sub nom. Jennings v. Rodriguez*, 136 S. Ct. 2489, 195 L. Ed. 2d 821 (2016) (identifying denials of parole "based on blatant errors: In two separate cases . . . officers apparently denied parole because they had confused Ethiopia with Somalia. And in a third case, an officer denied parole because he had mixed up two detainees' files.").

## STATEMENT OF FACTS

18.     Mr. Traore is a native and citizen of Mali who was born on January 1, 1970.

19.     On February 3, 2006, Mr. Traore was paroled into the United States at Detroit Metropolitan Airport, in Detroit Michigan, pursuant to Immigration and Nationality Act (INA) section 212(d)(5) in order to pursue a relief application.

20.     On December 4, 2017, the Department of Homeland Security issued a Notice to Appear charging Mr. Traore with being removable from the United States. Mr. Traore was charged with removability pursuant to INA section 212(a)(7)(A)(i)(I), as an alien who at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document.

21.     On December 5, 2017, Mr. Traore was detained by the Immigration Customs and

Enforcement (ICE), at the Bergen County Jail, 160 South River Street, Hackensack, New Jersey

07601.

22.     On January 29, 2018 Mr. Traore had a Master Calender Hearing before the Honorable

Judge Thomas J. Mulligan at 201 Varick Street, New York, New York 10014, where it was

determined that Mr. Traore was an arriving alien, pursuant to INA section 212(d)(5), and was

therefore denied bond. The Judge noted that if Mr. Traore would not have been classified as an

arriving alien, he would have released him on bond, pursuant to INA section 236(a).

23.     Also, on January 29, 2018, Mr. Traore filed a Writ of Habeas Corpus with this Court

seeking a determination that he was eligible for a bond hearing after the Immigration Court's

determination that the immigration judge was divested of jurisdiction. That case was docketed as

18-cv-00794-JMF.

24.     On March 7, 2018, Mr. Traore married his fiancee while in custody at the Bergen County

Jail. Mr. Traore's wife filed an I-130 petition on his behalf which was ultimately denied.

25.     On April 30, 2018, this Court denied Mr. Traore's petition for a Writ of Habeas Corpus.

As a threshold matter the Court determined that Mr. Traore was detained pursuant to 8 U.S.C. §

1225(b)(2)(A). This Court went on to determine that Mr. Traore's detention without a bond

hearing had not yet become so excessive as to be a due process violation.

26.     On June 21, 2018, Immigration Judge Thomas J. Mulligan granted Mr. Traore's

application for withholding of removal pursuant to section 241(b) of the INA. Withholding of

removal is a mandatory form of protection relief which precludes removal from the United States

upon a showing by an alien that it is more likely than not that his or her life or freedom would be

threatened in the proposed country of removal on account of race, religion, nationality,

membership in a particular social group, or political opinion. Specifically, Judge Mulligan

determined that Mr. Traore established that his life was in danger based upon his claim that he

was previously targeted by the Muslim Brotherhood due to his lack of adherence to Islam.

26.     At the conclusion of the hearing the Department of Homeland Security reserved the right

to appeal Judge Mulligan's decision the Board of Immigration Appeals. On July 19, 2018, the

Department of Homeland Security exercised the right to appeal. The appeal is currently pending

at the Board of Immigration Appeals. As of the date of this petition, the parties are awaiting

production of the transcript of the proceedings before the Immigration Court. Upon issuance of

the transcript, the Board of Immigration Appeals will set a briefing schedule.

## LEGAL BACKGROUND

27.     Mr. Traore, despite being an asylum seeker whom the government seeks to remove, has a

right to due process under the Constitution. *See Demore*, 538 U.S. 510, 523 (2003) ("'It is well

established that the Fifth Amendment entitles aliens to due process of law in deportation

proceedings.'") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from

imprisonment—from government custody, detention, or other forms of physical restraint—lies at

the heart of the liberty" that the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. This

fundamental due process protection applies to all noncitizens present in the United States,

including removable and inadmissible non-citizens. *See id.* at 721 (Kennedy, J., dissenting); *see

also Rosales-Garcia v. Holland*, 322 F.3d 386, 410 (6th Cir. 2003) ("government treatment of

excludable aliens *must* implicate the Due Process Clause of the Fifth Amendment"); *Birch v.

Decker*, No. 17 Civ. 6769, 2018 WL 794618, at *4 (S.D.N.Y. Feb. 7, 2018) ("the Court is not

aware of a single case which holds that an arriving alien detained for removal proceedings in a U.S. detention facility on the mainland has <u>no</u> due process rights under the constitution").

28.     As such, detention pursuant to immigration proceedings – which are civil, not criminal – is constitutionally permissible only in "certain special and 'narrow' nonpunitive 'circumstances.'" *Zadvydas* at 690 (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).  Due process requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the [detained] individual's constitutionally protected interest in avoiding physical restraint." (internal quotations omitted). *Id.* at 690. In the immigration context, the Supreme Court has recognized only two valid purposes for detaining noncitizens: to mitigate the risks of danger to the community and to prevent flight. *Id.* at 690-91; *see also Demore*, 538 U.S. at 515, 527-28.

**Prolonged Detention Without a Bond Hearing under §1225(b) Violates Due Process**

29.     Due process requires the government to provide bond hearings to noncitizens facing prolonged detention. "The Due Process Clause foresees eligibility for bail as part of due process" because "[b]ail is basic to our system of law." 138 S.Ct. at 862 (Breyer, J., dissenting) (internal quotations and citations omitted). While the Supreme Court upheld the mandatory detention under § 1226(c) in *Demore*, it did so based on the petitioner's concession of deportability and the Court's understanding that detentions under § 1226(c) are typically "brief." *Demore*, 538 U.S. at 522 n.6, 528.[1] Where a noncitizen has been detained for a prolonged period, due process requires

---

[1] The statistical information provided by the Government and relied upon by the Supreme Court in *Demore* was in 2016 revealed by the Solicitor General to be inaccurate, and the true average length of immigration detention was shown to be much longer. *See Jennings*, 138 S.Ct. at 869 (Breyer, J., dissenting) ("The Government now tells us that the statistics it gave to the Court in *Demore* were wrong. Detention normally lasts twice as long as the Government then said it did. . . . thousands of people here are held for considerably longer than six months without an opportunity to seek bail.").

an individualized determination that such a significant deprivation of liberty is warranted. *Id.* at

532 (Kennedy, J., concurring) ("individualized determination as to his risk of flight and

dangerousness" may be warranted "if the continued detention became unreasonable or

unjustified"); *see also Jackson v. Indiana*, 406 U.S. 715, 733 (1972) (detention beyond the

"initial commitment" requires additional safeguards); *McNeil v. Dir., Patuxent Inst.*, 407 U.S.

245, 249-50 (1972) ("lesser safeguards may be appropriate" for "short term confinement");

*Hutto v. Finney*, 437 U.S. 678, 685-86 (1978) ("the length of confinement cannot be ignored in

deciding whether [a] confinement meets constitutional standards").

30.     Following *Zadvydas* and *Demore*, every Circuit Court of Appeals to confront the issue

has found that noncitizens subject to unreasonably prolonged mandatory detention require a bond

hearing – either pursuant to the Due Process clause or to avoid serious constitutional concerns.

*See Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199 (11th Cir. 2016), *vacated* No. 14-11421, 2018 WL

2247336 (11th Cir. May 17, 2018) (addressing detention under 8 U.S.C. § 1226(c)); *Reid v.*

*Donelan*, 819 F.3d 486 (1st Cir. 2016) (same); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015),

*vacated* 138 S.Ct. 1260 (2018) (same); *Rodriguez v. Robbins (Rodriguez III)*, 804 F.3d 1060 (9th

Cir. 2015), *rev'd sub nom. Jennings v. Rodriguez*, 138 S. Ct. 830, 2018 WL 1054878 (Feb. 27,

2018) (§§ 1226(c), 1225(b)); *Diop v. ICE*, 656 F.3d 221 (3d Cir. 2011) (§ 1226(c)); *Diouf v.*

*Holder* (*Diouf II*), 634 F.3d 1081 (§ 1231(a)); *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003) (§

1226(c)) (requiring release when mandatory detention exceeds a reasonable period of time).

31.     The Supreme Court in *Jennings* held that the Ninth Circuit erred by interpreting Sections

1226(c) and 1225(b) to require bond hearings as a matter of statutory construction. 138 S.Ct. at

843-44. However, the Court left for the lower courts to decide what process the Constitution requires to ensure that prolonged immigration detention is in fact reasonable. *Id.* at 851.

32.     Prior to *Jennings*, the Second Circuit concluded that "in order to avoid the constitutional concerns raised by indefinite detention, an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention." *Lora*, 804 F.3d at 616. t. 1260 (2018).  The Supreme Court vacated and remanded *Lora* as it rejected the application of the canon of constitutional avoidance to the immigration statutes.  Although the Second Circuit has since dismissed *Lora* as moot, it remains "strong persuasive authority." *See Sajous v. Decker*, No. 18 Civ. 2447, 2018 WL 2357266, at *6-7 (S.D.N.Y. May 23, 2018) (citing *Brown v. Kelly*, 609 F.3d 467, 476-77 (2d Cir. 2010)). While the *Lora* court technically interpreted the relevant statute to find that individualized hearings were required after six months of mandatory detention, it engaged in significant constitutional analysis to reach that holding. 804 F.3d at 613, 615 ("[Lora] argues to this Court that his indefinite detention without being afforded a bond hearing would violate his right to due process. We agree."); *see also Sajous*, 2018 WL 2357266 at *9.

33.     The conclusion that due process requires "some procedural safeguard in place for immigrants detained for months without a hearing," *Lora*, 804 F.3d at 614, is buttressed by significant persuasive authority in this jurisdiction. *See e.g.*, *Faure v. Decker*, No. 15 Civ. 5128, 2015 WL 6143801, at *3 (S.D.N.Y. Oct. 19, 2015) (petitioner's "continued detention [under 1226(c)] without a bond hearing violates the Due Process Clause"); *see also Minto v. Decker*, 108 F.Supp.3d 189, 195-96 (S.D.N.Y. 2015)  (due process requires individualized bond hearing to determine whether petitioner's detention [under 1226(c)] was justified); *Gordon v. Shanahan*,

No. 15 Civ. 261, 2015 WL 1176706, at *3-5 (S.D.N.Y. Mar. 13, 2015) (same); *Bugianishvili v. McConnell*, No. 15 Civ. 3360, 2015 WL 3903460, at *9 (S.D.N.Y. June 24, 2015) (same); *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 544-50 (S.D.N.Y. 2014) (same); *see also Birch*, 2018 WL 794618, at *4 (same for 1225(b) petitioner); *Alberto v. Decker*, No. 17 Civ. 2604, 2017 WL 6210785, at *7 (S.D.N.Y. Nov. 21, 2017) (same for 1225(b) petitioner); *Osias v. Decker*, 273 F.Supp.3d 504 (S.D.N.Y. 2017) *vacated on other grounds*, No. 17 Civ. 02786, 2017 WL 3432685 (S.D.N.Y. Aug. 9, 2017) (same for 1225(b) petitioner).

34.    As for when a hearing should occur, many courts have found that as detention approaches six months, the Constitution requires additional process to justify its reasonableness. *See Zadvydas*, 533 U.S. at 701 ("Congress previously doubted the constitutionality of detention for more than six months"); *Demore*, 538 U.S. at 529-30 (upholding only "brief" detentions that last "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal"); *Lora*, 804 F.3d at 616 (requiring bail hearings "within six months" of detention); *see also Cheff v. Schnackenberg*, 384 U.S. 373, 380 (1966) (plurality opinion) (limiting imposable sentence to six months for a criminal offense without procedural protection of a jury trial).  The Supreme Court has also looked to six months as a benchmark in other contexts involving civil detention. *See McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 249, 250-52 (1972) (recognizing six months as outer limit for confinement without individualized inquiry for civil commitment).

**Arriving Aliens Have a Constitutional Liberty Interest During the Pendency of Proceedings**

35.    Section 1225(b)(2) grants arriving aliens the right to have their admissibility and applications for relief adjudicated in full removal proceedings under § 1229a. As such, the

prolonged detention without a bond hearing of individuals deemed to be arriving aliens affronts due process for many of the reasons discussed by *Lora* and extended to noncitizens detained under § 1225(b) by courts in this district prior to *Jennings*. *See Pan v. Sessions*, 290 F.Supp.3d 250, 254 (S.D.N.Y. Feb. 7, 2018) (collecting cases).

36.     The Supreme Court has held that both removable and inadmissible aliens who have been ordered removed are entitled to freedom from arbitrary and capricious detention. *See Zadvydas*, 533 U.S. 678 (interpreting application for § 1231(a) to deportable individuals); *Clark v. Martinez*, 543 U.S. 371 (2005) (extending *Zadvydas* to inadmissible individuals); *see also Diouf*, 634 F.3d 1081. It is clear, moreover, that "all persons" within the confines of the United States benefit from the protections of the Due Process Clause. *Zadvydas*, 533 U.S. at 693; *see also Rosales-Garcia*, 322 F.3d at 410 ("[i]f excludable aliens were not protected by even the substantive component of constitutional due process, as the government appears to argue, we do not see why the United States government could not torture or summarily execute them."). Courts' reasoning in these mandatory immigration detention cases demonstrates that the existence of a due process violation does not depend on the statutory basis for the detention or the immigration status of the individuals subjected to prolonged detention, but rather on the nature of the detention and the availability of procedural protections.

37.     As recognized by a number of district courts, *Lora*'s due process analysis extends logically to noncitizens who have a statutory right to contest their removal in a full hearing. *See, e.g., Birch*, 2018 WL 794618 at *1-2 (finding due process requires bond hearing where petitioner was an arriving alien seeking asylum after conviction for smuggling narcotics across the border). The constitutional underpinnings of the *Lora* decision apply to both LPR and non-resident

arriving aliens who are placed in removal proceedings. *See Arias v. Aviles*, No. 15 Civ. 9249, 2016 WL 3906738, at \*1 (S.D.N.Y. July 14, 2016) (LPR petitioner detained upon seeking reentry to U.S. after brief trip abroad entitled to due process protections); *Alberto*, 2017 WL 6210785, at \*7 (concluding that for non-resident arriving alien with a pending asylum application, "indefinite detention without a hearing is a deprivation of due process of law").

38.     While the "growing consensus" emerging in this district regarding the applicability of *Lora* to arriving aliens relied in some decisions on statutory construction, *see Pan*, 290 F.Supp.3d at 255-56, a number of courts affirmatively reached the constitutional question and held that prolonged detention of non-resident arriving aliens without a bond hearing offends due process. *See, e.g., Birch,* 2018 WL 794618 at \*1, 7 ("[I]t is not reasonable, and indeed not constitutional, that the Government detain petitioner on U.S. soil, in a U.S. detention facility, for eleven months without a bond hearing and without any end in sight."); *Alberto*, 2017 WL 6210785 at \*7; *Osias*, 273 F.Supp.3d 504.  Importantly, although the petitioner in *Lora* was a permanent resident, the Second Circuit did not base its ruling on his status nor limit the ruling to exclude detainees who lacked immigration status, were charged as inadmissible, or had only briefly resided in the U.S. *See* 804 F.3d at 613-16.

**Release on Bond is Legally Distinct from a Lawful Admission**

39.     The Supreme Court's plenary power doctrine directs that the exclusion or admission of noncitizens into the United States is "a power to be exercised exclusively by the political branches of government."  *Kleindienst v. Mandel*, 408 U.S. 753, 765 (1972) (internal quotation marks omitted).  In the instant petition, Mr. Traore does not challenge the political branches' authority to determine whether he will eventually be lawfully admitted into the United States or

removed to Mali; he merely asserts that due process prohibits his prolonged mandatory detention without any judicial review while that determination is being made.

40.     A lawful "admission" into this country is legally distinct from release from respondents' custody.  *See* 8 U.S.C. § 1101(a)(13)(A) ("admission" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer").   The former is under the purview of the Immigration Court and the Board of Immigration Appeals; the latter is subject to review by this Court pursuant to the habeas corpus statute and the Constitution.  *See Hechavarria v. Sessions*, No. 16 Civ. 1380, 2018 WL 2306595, at *2 (2d Cir. May 16, 2018) (courts have habeas jurisdiction in immigration cases as "at its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest").  *Zadvydas* made clear that the power to admit individuals from the United States and the power to detain while admissibility decisions are made and effectuated are separate for due process purposes.  The detainees there had lost all legal right to reside in the U.S. but the Court nonetheless recognized their interest in "[f]reedom from . . . physical restraint."  533 U.S. at 690. In contrast, petitioner here is currently seeking admission through his asylum application, which has yet to be adjudicated; as such, his right to liberty is logically even more significant.

   *Due Process Requires a Bond Hearing at Which the Government Bears a Heightened Burden of Proof*

41.     To justify continued detention where the liberty deprivation has already been so severe, the government must demonstrate by "clear and convincing" evidence that an individual presents a risk of flight or a danger to the community. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir.

2011). Further, due process requires that an individual's ability to pay and alternative conditions
of release to be taken into account when setting a bond. *United States v. Salerno*, 481 U.S. 739
(1987).

42.      The Supreme Court has placed the burden on the government to establish the need for
ongoing civil detention in many different contexts.  *See, e.g., Cooper v. Oklahoma*, 517 U.S. 348,
363 (1996) ("[D]ue process places a heightened burden of proof on the State in civil proceedings
in which the individual interests at stake . . . are both particularly important and more substantial
than mere loss of money.") (citation and quotation marks omitted); *Foucha*, 504 U.S. at 81-83
(striking civil insanity detention statute because it placed the burden on detainee to prove
eligibility for release); *Kansas v. Hendricks*, 521 U.S. 346, 368 (1997) (upholding involuntary
civil commitment of certain sex offenders but requiring "strict procedural safeguards" including
a right to a jury trial and proof beyond a reasonable doubt); *Salerno*, 481 U.S. at 750-52
(upholding federal bail statute permitting pretrial detention where statute required strict
procedural protections, including prompt hearings where government bore the burden of proving
dangerousness by clear and convincing evidence).

43.      To meet due process requirements, a person in prolonged immigration detention "must be
admitted to bail unless the government establishes by clear and convincing evidence that the
immigrant poses a risk of flight or a risk of danger to the community." *Lora*, 804 F.3d at 616; *see
also Singh*, 638 F. 3d at 1203-1204 ("Because it is improper to ask the individual to 'share
equally with society the risk of error when the possible injury to the individual'—deprivation of
liberty—is so significant, a clear and convincing evidence standard of proof provides the
appropriate level of procedural protection.") (quoting *Addington v. Texas*, 441 U.S. 418, 427

(1979)). "It is particularly important that the Government be held to the 'clear and convincing' burden of proof in the immigration detention context because civil removal proceedings, unlike criminal proceedings, 'are nonpunitive in purpose and effect.'" *Argueta Anariba v. Shanahan*, No. 16-CV-1928 (KBF), 2017 WL 6397752, at *2 (S.D.N.Y. Dec. 14, 2017) (quoting *Zadvydas,* 533 U.S. at 690).

**The Discretionary Parole Scheme is Not a Substitute for an Individualized Bond Hearing**

44.     The only statutory provision for release of arriving aliens is 8 U.S.C. § 1182(d)(5)(A), which authorizes release on "parole." This hypothetical possibility of release by DHS officials is insufficient to eliminate the serious constitutional problems presented by prolonged mandatory detention of an individual entitled to due process protections.  *See, e.g.*, *Leslie v. Attorney General*, 678 F.3d 265, 267 n.2 (3d Cir. 2012) (noting that administrative custody review "at which neither [petitioner] nor counsel representing [him] was present" was insufficient to satisfy due process requirements). Multiple courts in this district have held that the existence of parole does not vitiate the need for individualized bond hearings. *See Ahmed v. Decker*, No. 17 Civ. 478, 2017 WL 60449387, at *7 (S.D.N.Y. Dec. 4, 2017) (collecting cases).

45.     Parole decisions under § 1182(d)(5)(A) are purely discretionary and made by the same agency responsible for jailing and deporting the parole applicant. *See* 8 C.F.R. § 212.5. DHS officers grant requests for parole under extremely limited circumstances. *See, e.g., Abdi v. Duke*, 280 F.Supp.3d 373 (W.D.N.Y. 2017), *order clarified sub nom. Abdi v. Nielsen*, 287 F.Supp.3d 327 (W.D.N.Y. 2018) (listing 25 instances in which arriving asylum seekers were detained for many months without being granted parole). Denial of parole is unreviewable, as it is not subject to review by an immigration judge or a federal district court. *See* 8 U.S.C. § 1252(a)(2)(B)(ii).

This lack of meaningful process renders the parole scheme fundamentally inadequate. *See* Hr'g Tr. at 51, *Sammy v. Decker*, 17 Civ. 2615 (S.D.N.Y. May 25, 2017) ("the parole decision is not made by a neutral judicial arbiter"); *accord Ricketts*, 2016 WL 7335675, at *4.

46.     Moreover, the two reasons for which parole may be granted – "urgent humanitarian reasons or significant public benefit," § 1182(d)(5)(A) – are unrelated to the purposes that non-punitive immigration detention is supposed to serve: ensuring the appearance of noncitizens at their immigration hearings and preventing danger to the community pending the completion of removal proceedings.  *See Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring); *Zadvydas*, 533 U.S. at 690-91; *see also Sammy*, Hr'g Tr. at 51; *accord Nord*, 2017 WL 6403884, at *4 (finding parole determination inadequate because standard is not "coextensive" with standards in a bond hearing). Consequently, where detention has become prolonged, the appropriate procedural safeguard is either immediate release or an individualized bond hearing at which the government bears the burden of proof.

## CLAIMS FOR RELIEF

## THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT

47.     Mr. Traore's 267 days of detention under §1225(b)(2) has surpassed the six month mark, and will continue for an extended period of time, and is unconstitutionally prolonged and violates due process given the circumstances of this case. Under an individualized "reasonableness" test, key factors include whether the noncitizen has raised a "good faith" challenge to removal, *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015), "the length of the detention," *id.* at 477-78, and the likelihood that detention will continue pending future proceedings, *id.* at 478.

48.     A court in this district recently found that the "first, and most important, factor that must be considered is the length of time the alien has already been detained" *Sajous*, 2018 WL 2357266, at *10. Second, "courts should consider whether the alien is responsible for the delay," i.e. whether "the alien has requested several continuances or otherwise delayed immigration proceeding." *Id.* "Continued detention will also appear more unreasonable when the delay in proceedings was caused by" the government. *Id.* at *11; *but see Ly*, 351 F.3d at 272 ("appeals and petitions for relief are to be expected as a natural part of the process" and "although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take"). "Third, it may be pertinent whether the detained alien has asserted defenses to removal." *Sajous*, 2018 WL 2357266, at *11. "Other factors may also be relevant, including whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable and whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." *Id.* (citations and quotation marks omitted).

49.     All the above-mentioned factors weigh heavily in Mr. Traore's favor. Mr. Traore has been detained for 267 days, and by the time that his appeal is resolved by the Board of Immigration Appeals, he will have been detained well in excess of the constitutionally permissible period. Mr. Traore is not responsible for his prolonged detention-he requested one continuance which was denied. On the contrary, he has made significant efforts to expedite the proceedings, and has prevailed on his claim for protection relief before the Immigration Judge.

50.     Alternatively, Mr. Traore is entitled to an individualized hearing because his detention has extend beyond six months. *See Zadvydas*, 533 U.S. at 701; *Demore*, 538 U.S. at 529-30; *Lora*,

804 F.3d at 616.  Scrutiny of detention lasting six months or longer is appropriate because "[i]t is not difficult to grasp the proposition that six months in jail is a serious matter for any individual." *Muniz v. Hoffman*, 422 U.S. 454, 477 (1975).

51.     Given the liberty interests at stake, the Government's statutory detention authority under § 1225(b) must be limited to a reasonable period and subject to a finding of flight risk or dangerousness in an individualized judicial bond hearing. Mr. Traore's detention has already become unreasonably prolonged given his individual circumstances, or in the alternative because he has been detained for more than six months.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that this Court grant the following relief:

(a)   Assume jurisdiction over this matter;

(b)   Grant the writ of habeas corpus and order Petitioner's immediate release from custody under reasonable conditions of supervision; or in the alternative, order a constitutionally adequate hearing where Respondents must demonstrate that Petitioner's continued detention is justified;

(c)   Declare that Respondents' detention of Petitioner violates the Due Process Clause of the Fifth Amendment because it bears no reasonable relation to a legitimate governmental purpose, and/or because Respondents have failed to provide him with a hearing where the government bears the burden of showing that such prolonged detention is justified;

(d)   Order Respondents to refrain from transferring the Petitioner out of the jurisdiction of the

ICE New York Field Office Director during the pendency of these proceedings and while the

Petitioner remains in Respondent's custody; and

(e)   Grant any other and further relief that this court deems just and proper.

Dated: August 29, 2018

Respectfully submitted,

/s/ Craig Relles
Craig Relles, Esq. (CR5112)
Law Office of Craig Relles
12 Water Street, Suite 203
White Plains, New York 10601
914.919.9030
cr@crelleslaw.com